## THE GREENPOINT.

*(District Court, S. D. New York. October 22, 1883.)*

1. COLLISION—WHARF—MOORING TOO NEAR—LINES SLIPPING—PASSING STEAMERS.

    In a river where steamers are frequently passing it is negligence and carelessness in one vessel to moor unnecessarily at the end of a wharf or bulk-head, within two or three feet of another vessel, whereby they are liable to be brought into collision through the surging and swaying caused by the waves of passing steamers.

2. SAME—CASE STATED.

    Where, under the above circumstances, a collision occurred in the East river, between the sterns of two vessels, and the evidence indicated that there was unnecessary slack line, or some slipping of the lines, *held*, both were chargeable with fault.

In Admiralty.

*Beebe & Wilcox,* for libelant.

*Goodrich, Deady & Platt,* for claimant.

BROWN, J. On the fourth of December, 1880, the schooner Clotilde, owned by the libelant, was moored, bows down stream, alongside of the bulk-head at Hunter's Point, in the East river. The lighter Greenpoint, at the same time, was moored next above the schooner, with her bows up the river. The steamer Sylvan Stream, at about 4 P. M., passed up the river at full speed, within a hundred feet of the bulk-head, and through the swell of the waves thus caused the sterns of the two vessels above named collided, by which the stern of the libelant's schooner was considerably injured, to recover damages for which this action is brought. On the part of the libelant it is claimed that, before the steamer passed, the schooner and the lighter were separated by a space of from 15 to 25 feet, and that the collision arose from the slipping of the lines by which the lighter was fastened to the bulk-head, so that she drifted down with the strong tide and struck the schooner's stern. The claimant's evidence tends to show that there was no slipping of the lines, but that the two boats were moored with their sterns so near to each other that the collision arose from the surging and swaying of the two boats in the swell of the waves caused by the steamer's passing.

The place where these vessels were moored being one where steamers are in the habit of passing frequently, both were bound to take all necessary precautions against injury to each other from the ordinary commotion in the water thereby occasioned, and from the liability to surge and sway from their positions.

The evidence shows that the lighter had previously discharged a portion of her cargo, consisting of iron rails, upon the same wharf or bulk-head, and had been ordered by the wharfinger to move further down for the purpose of discharging the rest. The schooner, which lay below, had at the same time been required to move further down to give room for the lighter, and had done so. While engaged in fastening, the schooner's men were requested by the men from the lighter to move further down and more out of the way; but they did not do so. The place where the lighter was fastened was the place designated by the wharfinger. Several witnesses on the part of the lighter testify that the sterns were not more than from two to four feet apart. The lighter's rail was from one to two feet below the level of the bulk-head, and the rail of the schooner was much higher from the water than that of the lighter. Not only several witnesses on the part of the claimant, but one of the principal witnesses of the libelant, show that the injury to the schooner was occasioned by the stern of the schooner dropping down, as it were, upon the stern of the lighter, breaking off the former's taffrail, starting the plankshear, and loosening the rudder-post. This description of the way in which the injury was done shows that it took place through the rise

and fall of the vessels from the swell of the steamer's waves. And this confirms, very clearly, it seems to me, the testimony of the claimant's witnesses, that the sterns of the two boats were moored very near to each other. Had the accident arisen from the surging of the boats, causing the lines of the lighter to become loosened, so as to suffer her to drift down with the tide from 15 to 25 feet, the swell of the waves from the steamer would have passed off before the lighter could have drifted down to the schooner, and the blow of the collision in that case would have been a horizontal blow, and not a perpendicular one, as described by the witnesses.

The way in which the damage arose shows, therefore, that it occurred during the few moments while the first few high waves were passing, and without any considerable drifting of the lighter downwards; and I accept, therefore, the libelant's account of the distance of the two vessels apart after they were moved. The defendant's evidence probably mistakes, and gives the distance apart before they were moved.

I must hold the schooner in fault for having moored so near to the lighter. The lighter was moored where she was directed; the schooner had abundant room below, was requested to move further off, and no reason existed for her not doing so. In the rise and fall of the tide some play in the position of the lighter was unavoidable, unless the lines were constantly changed and refastened—a burden which the schooner had no right to impose unnecessarily upon the lighter. And it was plain negligence in the schooner to fasten without reason so near to the lighter that a little slack line in the rise and fall of the tide, or a slight slipping or stretching of the lines, under the strain of the swaying from passing waves, would bring the sterns into collision.

Considerable testimony was given in regard to the mode in which the lines from the lighter were arranged for fastening. She had no spring lines, such as might have been used, and which would have retained her in a more stable position. She had one line running from each side of the bow and fastened to the spile on the pier, some 20 feet forward, and two other lines, one from each corner of the stern, fastened to a spile about 20 feet aft. While spring lines would have given somewhat more steadiness, and I should have held it negligence not to adopt that mode of fastening if essential, I am not satisfied of such insufficiency of the mode of fastening adopted as to charge the lighter with negligence on that ground alone. The evidence, however, establishes that the lines either slipped somewhat, or else had become considerably slackened before the steamer passed, or else were not properly secured. One of the claimant's witnesses, immediately after the collision, hauled in some slack line. He states it as only some 10 or 12 inches slack,—an estimate which might easily be considerably underrated. The distance of two or three feet apart, which the claimant gives, is too great, it seems to me, to be

accounted for by any justifiable amount of slack line in that situation; and some negligence, either in too great slack or in insufficient fastening, must therefore be imputed to the lighter. The danger from passing steamers being well known to both, I hold that neither exercised the caution and vigilance necessary to avoid injury to each other,—the schooner in unnecessarily, and contrary to warning from the lighter, putting herself in the lighter's way; and the latter for some inattention to her lines.

The libelant is, therefore, entitled to one-half his damages, with costs, and a reference may be taken to compute the amount.